UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 16-07839 DSF (Ex) | Date | 01/23/17 |
| Title | Karen Velie v. Adam Hill, et al. | | |

**Present:** The Honorable  DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Granting Defendants' Motion to Dismiss (Doc. 14) and Denying as Moot Defendants' Motion to Strike (Doc. 18)

Plaintiff alleges claims under 42 U.S.C. § 1983, California's Bane Act, and various common law theories. Defendants move to dismiss the complaint for failure to state a claim. Defendants also move to strike Plaintiff's state law claims under California's anti-SLAPP ("strategic lawsuits against public participation") statute. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons given below, the motion to dismiss is GRANTED, and the motion to strike is DENIED as MOOT.

## I. BACKGROUND

Plaintiff Karen Velie resides in the County of San Luis Obispo. Doc. 1, ¶ 3. She works as an investigative reporter and is majority owner of Cal Coastal News (CCN), a local media outlet. ¶ 9. Defendant Adam Hill is a San Luis Obispo County Supervisor who resides in that County. ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiff alleges that "she has been retaliated against by Adam Hill and his co-conspirators, some of whom are employees/principals of the County of San Luis Obispo, for reporting on issues which are matters of public interest." ¶ 9. "The harassment and retaliation began in 2012, and has been ongoing and continuing" up to the present day. Id. Specifically, Plaintiff alleges that Defendant Hill has harassed her by:

- Warning Plaintiff that he would "go after" her if she continued to investigate the Community Action Partnership of San Luis Obispo (¶ 10);

- Threatening Dave Congalton,[1] a local radio show host, that Hill would no longer appear on Congalton's show unless he stopped inviting Plaintiff as a guest (*id.*);

- Emailing Congalton to harass him for having Plaintiff as a guest, and to claim that Plaintiff is paid to write hit pieces, is dishonest, concocts stories, and is mentally ill (*id.*);

- Denying Plaintiff access to press releases, interviews, and County documents that were provided to other media outlets, and refusing to allow County officials to speak with Plaintiff by phone (¶ 11);

- Encouraging advertisers to withdraw their support for CCN (¶ 12).

In addition, Plaintiff alleges that Defendant Hill promoted and participated in a Facebook group called "Cal Coast Fraud." ¶ 13. Hill allegedly made "degrading and humiliating remarks about [Plaintiff]," including "false claims that she is mentally ill, false claims that she is a convicted felon, false claims that her new[s] stories are not accurate, as well as the posting of lewd statements about [Plaintiff] and her family, including her deceased daughter." Id. Plaintiff further alleges that Hill has "encouraged the posting of [Plaintiff's] home address and shared links to websites . . . which encourage people to go to her home and make threats against her." Id. Plaintiff alleges that she has had to move several times as a result of harassment she has received as a

---

[1] Plaintiff first refers to an individual named "Dave Congalton," and then to an individual named "David Congleton." Doc. 1, ¶ 10. The Court assumes this is a typographical error, and will use the first spelling.

result. At one point, "her dog was fatally poisoned and left on her front porch." Id. A dead cat was also placed on her porch. Id. The San Luis Obispo Sheriff's Department has refused to assist her in responding to these threats, allegedly at the behest of Defendant Hill. Id. The Sheriff's Department has also provided altered incident reports to Plaintiff. Id.

Based on the foregoing allegations, Plaintiff asserts claims against Defendant Hill and the County of San Luis Obsipo for: (1) depriving her of her rights under the First, Fourth, Fifth, and Fourteenth Amendments, in violation of 42 U.S.C. § 1983; (2) intentionally interfering with prospective economic relations; (3) intentionally interfering with contractual relations; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) violation of the Bane Act, Cal. Civ. Code § 52.1. Defendants move to dismiss the complaint for failure to state a claim, and to strike Plaintiff's state law claims under the anti-SLAPP statute.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original; internal quotation marks omitted). But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original; citation and internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief." Id. at 679 (alteration incorporated; internal quotation marks and citation omitted).

### III.   ANALYSIS

#### A.   Section 1983

"To establish a § 1983 claim, a plaintiff must show that an individual acting under the color of state law deprived [her] of a right, privilege, or immunity protected by the United States Constitution or federal law." Levine v. City of Alameda, 525 F.3d 903, 905 (9th Cir. 2008). Plaintiff argues that Defendants violated her constitutional rights in two ways. First, Plaintiff argues that Defendants violated her First Amendment rights by denying her access to press releases, preventing her from contacting County officials by phone, and refusing to give her substantive responses to written requests for information. Second, Plaintiff contends that Defendants violated her First Amendment rights by retaliating against her based on her journalistic activities.[2] Defendants move to dismiss Plaintiff's § 1983 claim, arguing that she has not identified any constitutional violation.

##### i.   Denial of Access

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of . . . the press." The Supreme Court has indicated that this amendment provides some protection for news gathering activities. Pell v. Procunier, 417 U.S. 817, 833 (1974) (citing Branzburg v. Hayes, 408 U.S. 665, 681 (1972)). For example, the amendment gives journalists the right to attend government proceedings that have

---

[2] In her opposition, Plaintiff also states that her § 1983 claim is "based on denial of equal protection," but she fails to provide any argument or authority in support of this theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

traditionally been open to the public. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 577–80 (1980) (right to attend criminal trials); Cal. First Amendment Coal. v. Woodford, 299 F.3d 868, 877 (9th Cir. 2002) (right to attend executions); Borreca v. Fasi, 369 F. Supp. 906 (D. Haw. 1974) (right to access "the public galleries, the press rooms, and the press conferences dealing with government") (citing Lewis v. Baxley, 368 F. Supp. 768 (M.D. Ala. 1973)). But the Supreme Court "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control." Houchins v. KQED, Inc., 438 U.S. 1, 9 (1978). Thus, journalists cannot use the First Amendment as a sword to force the government to produce documents that have traditionally been held in confidence. See N.Y. Times Co. v. U.S. Dep't of Justice, 806 F.3d 682, 688 (2d Cir. 2015). Nor can a journalist use the amendment to force government officials to grant an interview or assist her in collecting information. See Raycom Nat., Inc. v. Campbell, 361 F. Supp. 2d 679, 688 (N.D. Ohio 2004) ("Public officials are under no constitutional obligation to speak to the press at all . . . .") (citations and internal quotation marks omitted); Snyder v. Ringgold, 40 F. Supp. 2d 714, 718 (D. Md. 1999) ("No reporter has a right to access to a particular interview, exclusive story, or off the record statement.").

     Plaintiff does not allege she was denied access to any government proceeding. Instead, she argues she was denied access to press releases, prevented from speaking with County officials by phone, and denied substantive responses to written requests for information. In other words, Plaintiff's complaint is that the government failed to assist her news gathering activities. The First Amendment does not give Plaintiff a right to such assistance. See Raycom, 361 F. Supp. 2d at 688; Snyder, 40 F. Supp. 2d at 718.

     Plaintiff's attempt to analogize her case to Borreca is unavailing. Borreca was a news reporter with the Honolulu Star-Bulletin who published several unflattering stories about Mayor Fasi of Honolulu. Id. at 907. In response, Mayor Fasi "declared Borreca persona non grata at city hall and instructed his staff, and specifically his administrative assistant . . . , to keep Borreca out of the mayor's office." Id. Based on this instruction, Mayor Fasi denied Borreca entry to one of his general news conferences. Id. at 907–08. The conference was otherwise open to any member of the media. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The court issued a preliminary injunction requiring the Mayor to allow Borreca to attend general news conferences, explaining that the Mayor's policy of excluding Borreca ran afoul of the "right of access to the public galleries, the press rooms, and the press conferences dealing with government" guaranteed by the First Amendment. Id. at 909 (citing Lewis, 368 F. Supp. 768). But the court went out of its way to explain that the Mayor was not required "to respond in any way to any question put to him by any representative of any news media." Id. at 910–11. Thus, Borreca neatly tracks the Supreme Court's jurisprudence, which recognizes a First Amendment right to access government proceedings, but does not require the government to assist reporters in gathering news.

As explained, Plaintiff does not allege that she was denied access to any government proceeding, and the First Amendment gives her no right to demand that Defendants supply her with press releases, interviews, or government documents. Accordingly, Plaintiff has no cognizable First Amendment claim based on the alleged denial of access.

        ii.     Retaliation

"The First Amendment of the Constitution protects citizens from attempts by government officials to chill their speech." Mulligan v. Nichols, 835 F.3d 983, 986 (9th Cir. 2016). "To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Id. at 988 (citation and quotation marks omitted). Whether a particular adverse action would chill a person of ordinary firmness is a question of law. Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006).

There is no dispute that Plaintiff's journalistic activities are constitutionally protected. The question is whether the Defendants subjected Plaintiff to adverse actions based on these protected activities. Plaintiff offers three theories of retaliation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

First, Plaintiff argues that Defendants retaliated against her by denying her access to press releases, preventing her from speaking with County officials by phone, and denying her substantive responses to written requests for information. Doc. 1, ¶ 19. These allegations do not give rise to a retaliation claim. As the Fourth Circuit has explained, "no actionable retaliation claim arises when a government official denies a reporter access to discretionarily afforded information or refuses to answer questions." Baltimore Sun, 437 F.3d at 418; see also Ilana Friedman, *Where Public and Private Spaces Converge: Discriminatory Media Access to Government Information*, 75 FORDHAM L. REV. 253 (2006) ("The case law does not lead to the conclusion that discriminatory denial of access or any other denial of access ought to constitute a First Amendment violation."). The Court has already held that Plaintiff had no right to press releases, interviews, or government documents.

Second, Plaintiff argues that Defendant Hill retaliated against her by publicly stating that Plaintiff was mentally ill and incompetent and by "sharing . . . website links and Facebook postings . . . which contain lewd and vulgar statements about [Plaintiff] and her children." Doc. 1, ¶ 19. These allegations are insufficient to support a retaliation claim. The Ninth Circuit's decision in Mulligan, 835 F.3d 983, is instructive. The plaintiff in that case was injured in an altercation with two Los Angeles Police Department officers, and subsequently filed an administrative claim against the City. Id. at 986. The City allegedly responded by publicly accusing the plaintiff of being a drug abuser and having acted aggressively toward the officers. Id. The plaintiff lost his job as a result of this publicity, and brought a claim under § 1983 alleging retaliation in violation of the First Amendment. Id.

The court rejected this claim, explaining:

> Retaliation claims involving government speech warrant a cautious approach by courts. Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

In accordance with these principles, we have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim. In *Gini v. Las Vegas Metropolitan Police Department*, 40 F.3d 1041, 1043–44 (9th Cir. 1994), the plaintiff alleged that she had lost her federal job as a result of allegedly defamatory statements made by a city police officer to her federal superiors following her filing of an Internal Affairs complaint. We affirmed the dismissal of her retaliation claim against the city. We noted that an act of defamation by government officials was insufficient to create a right to a remedy under the First Amendment in the absence of "state action affecting [a plaintiff's] rights, benefits, relationship or status with the state." Similarly, in *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998), which involved a claim by a police officer against his government employer, we held that "[m]ere threats and harsh words" are not ordinarily sufficient to constitute an adverse employment action for purposes of a First Amendment claim. As we stated in *Nunez*, "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation."

As was the case in *Gini* and *Nunez*, the accusations and media leaks by the [Defendants] are not enough to demonstrate a constitutional violation. The Defendants in this case did not "make any decision or take any state action affecting [Mulligan's] rights, benefits, relationship or status with the state." *Gini*, 40 F.3d at 1045. Nor can Mulligan show "the loss of a valuable governmental benefit or privilege." *Nunez*, 147 F.3d at 875. Although Mulligan's reputation was undoubtedly damaged by the increased media attention, which eventually resulted in the loss of his job, such reputational harm is not actionable under § 1983 unless it is accompanied by some more tangible interests.

Id. at 989 (some internal citations and quotation marks omitted); accord Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000) ("where a public official's alleged retaliation is in the nature of speech," there is no constitutional violation "in the absence

of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow") (quoting).

Mulligan is controlling here. Plaintiff alleges that Defendant Hill retaliated against her by making defamatory and threatening statements. These statements may have caused reputational, professional, or emotional harm. But such harm is insufficient to clear the "high bar" over which a claim alleging relation based on a government official's speech must pass. Plaintiff does not allege that Defendants "mad[e] any decision or t[ook] any state action affecting [her] rights, benefits, relationship or status with the state." Id. (citation and quotation marks omitted). Nor does Plaintiff allege "the loss of a valuable government benefit or privilege." Id. (citation and quotation marks omitted). Plaintiff's second theory fails as a matter of law.

Plaintiff's third theory is that Defendants retaliated against her by "pressur[ing] several of her advertisers to stop doing business with her in an effort to destroy her financially." Doc. 1, ¶ 19. Plaintiff does not allege that Defendants threatened to issue any "punishment, sanction, or adverse regulatory action" against either Plaintiff or the advertisers. Suarez, 202 F.3d at 687. The allegations suggest only that Defendant Hill made defamatory statements about Plaintiff to her business associates. As explained, mere defamation by a government official will not support a retaliation claim.

### iii. Leave to Amend

"Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). But "[a] district court may dismiss a complaint without leave to amend if amendment would be futile." Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 600 (9th Cir. 2014) (citation and quotation marks omitted). Plaintiff's § 1983 claim fails as a matter of law; she cannot cure the defects in this claim by pleading it with more particularity. Accordingly, the Court DISMISSES the claim WITH PREJUDICE.

### B. State Law Claims

As Plaintiff's federal claim was the only basis for subject matter jurisdiction, the Court now has discretion to retain or to dismiss the supplemental claims. 28 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Given that this dismissal occurred pre-trial, the Court exercises its discretion to dismiss the action. See Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997); see 28 U.S.C. § 1367(c) Comm. on 1988 Rev. The Court dismisses the state law claims without prejudice to filing in state court. Defendant's motion to strike is DENIED as moot.

## IV. CONCLUSION

The motion to dismiss (Doc. 14) is GRANTED with prejudice as to the federal claim and without prejudice to the state claims. The motion to strike (Doc. 18) is DENIED as moot.

IT IS SO ORDERED.